That evidence would likely have been visible in the photographs. Well, not if it's been cleaned up first. I think that's what counsel is essentially alleging. That there's some possibility of nefarious conduct by law enforcement and that the defendant shouldn't be forced to be reliant on the law enforcement officers to convey accurate information. He should have a chance to look and see if there's some traces that the photos don't reveal. So, Your Honor, there's a lot of evidence in this case from a number of different individuals and that's where, frankly, the bad faith requirement remains important. Because these shell cane students were not lost because somebody kind of came up with a problem. They were tested over and over again. Some of that testing was favorable to the government. Some of it was not. For example, we tested for DNA evidence and for fingerprints and there were no fingerprints and no DNA. And we turned that information over to the defense. So the shell casings were not kind of exclusively bad for the defendant. We turned over that information. What there was not was any reason whatsoever to get rid of those shell casings because there was ample testimony that the lack of DNA evidence and the lack of fingerprints would not be exculpatory because the expert testified that that's kind of not usually found on a spent cartridge. But also, the evidence custodian who lost the shell casings, it was a pure accident. He had no reason to lose them. He knew nothing about the case. He testified at trial. He testified that he picked up the shell casings from the FedEx, from the mailroom. He brought them to his office, to the evidence room. Somewhere they got lost. So this is not a situation where somebody sees potentially exculpatory value in these shell casings and loses them or destroys them. This is a situation where it's purely gone and through no fault of anybody's. I can address the ineffective assistance of counsel, or if Your Honors prefer, I can rely on the briefs. I think we're all set, counsel. Thank you. We have your argument. Thank you. And Mr. Frisch, you reserve three minutes. Thank you, Your Honor. I want to make two points. First of all, the prosecutor said that they could have preceded a trial just with photographs. They could have elected to do so. That's true. But this isn't purely a sufficiency case. Had they so preceded, Mr. Tompkins would have had the ammunition to inspect. And at least Garcia and residential funding are not novel, and it's not my idea. It's the settled law of this circuit. As the Court explained in those cases, the inference, the adverse inference against the government restores the evidentiary balance. The inference should be against the party responsible for the loss. And as Judge Deary said in Soriano, the degree of malfeasance when it comes to the instruction is besides the point because the damage is done whether it's a thoughtless blunder or a deliberate act, but also because of the virtual impossibility to overcome all the procedural obstacles and institutional reluctance to find misconduct. So if the Court's not inclined to find spoliation on the unusual facts of this case, it should at least remand for a new trial based on Judge Corman's failure to give the adverse instruction to which Mr. Tompkins was entitled. For an adverse inference charge, would you not have to show or at least raise an issue as to destruction with a culpable? No, not at all. No, the case law is clear that you have to show a culpable state of mind, but that has been interpreted by the courts, this Court, to mean negligence is okay. If you have negligence, you get the adverse instruction. In which case is that? That's Garcia. Garcia, which is a summary order, right? I don't believe so. There's residential funding. That's a civil case that is a published opinion. Garcia is cited in your brief as 596 Fed Appendix, which would suggest it's a summary order. No, it's relying on Chin, which is a published opinion. That's it. Okay. All right. Your Honors, thank you. Thank you. All right, thank you both. The matter is submitted, and we'll take it under advisement. And we will turn to our last argument for today, McCullough v. Graves et al., 24-506. We have argument today from the plaintiff appellant and no argument from the appellees. So we'll hear from you, Mr. McCullough, when you're ready. You don't need to reserve any time. You can just go through your five minutes whenever you're ready. I'm absolutely nervous here. I've never done this before. Don't worry about it. All right. I guess I'm here. As far as I can explain is I'm here to implore your help. I've proven beyond a fact that these officers have arrested me unjustly for a stop that never happened. I was arrested for a stop that they say happened 9-4-2020. There was no stop. There is no proof of it. I guess I contend that with the court's approval of discovery request that I can prove that the warrants weren't valid. Was there a stop on the 3rd and not on the 4th, or was there never a stop at all? Well, this is what originally happened. I got pulled over on September 3rd, 2020. I was taken to the police station. I was given a property receipt, and I walked in the front door, walked out the back, walked out the same door. My car was towed, and my property was kept. A year later, I'm trying to find out what happened with this ticket. I was told by the courts. I went in front of the courts, the traffic court, the Spiegel traffic court. The judge stated that no stop was ever reported for, you know, that there's no ticket, no nothing from it. All right. Two years later, I'm walking out of my front door. I get arrested by these officers. They say they have a warrant for my arrest for a stop that happened on 9-4-2020. Now, I have the original 9-1-1 report stating that I did get pulled over on the 3rd and that nothing came about. I never got a ticket, no appearance ticket, no nothing. 9-4-2020, I was never arrested at all. What happened was these officers arrested me. Well, they pulled me over on the 3rd of 2020. But two years later, they changed their statements. They put in a statement saying that I had committed crimes, that they observed this. As a matter of fact, plaintiff contends that Officer Graves concocted the whole story of chasing down a plaintiff's Q60 Infinity car with a bike. While giving the description of the suspect, making eye contact with the driver, while simultaneously making an undocumented call to Officer Frost from the same bike. Yet neither Officer Pritchard or Officer Graves bothered to record, turn on body cameras, never turned on it. This whole stop took place in nine minutes. They're saying they were chasing me down on bikes. I have a 2015 hardtop convertible. I don't know what else to say. I mean, I can say that I've given you the statement from the court itself, from their own district attorney stating that the docket number doesn't exist. There was no stop ever reported for the night. No ticket was ever filed or on e-file, but yet they arrested me two years later coming out of my door. That's why I say I was kidnapped. I was totally surrounded by the officers. They said they have a warrant, but never showed me a warrant. I was locked up for 15 days, 23-hour lockup. At this time, I wasn't given any paperwork as to why I was being arrested or why I was being detained. I was kept out of the police blotter. They never reported. They told everyone I wasn't in jail. Fifteen days later, they bring me into court, and they assign me an attorney who gets me put on house arrest when bail was offered. So I got put on 60-day more house arrest. And during this time, the attorney they assigned me refused to let me see what I was being accused of a charge with until I paid him. And so I had to get another attorney. And with this other attorney, it turns out that he shared all my information with the police. And every time I pointed out something wrong with the case, it all disappeared. I ended up having to tell the judge that at this point I have to stand for myself and speak for myself because my lawyer's not helping me. All right, at this point, the judge said this case is dismissed before he speaks and threw me out of the court. And I mean, I was asked what more could I want. I wanted justice. I was arrested unjustly. There was never a stop that night. I never committed a crime whatsoever. The whole night started, I pulled into Gary's parking lot. Well, I was accused of being with Charles Kanga. All right, well, the officer stated it was the town's biggest drug dealer. This is the head of the drug task force. I'm here to prove that the head of the drug task force and the guy I was with, they're best friends. I was introduced to both of them by each other. And the officer used Charles' name in a statement against me. They made this statement disappear. That's why I'm saying with the court's approval, the original arrest report, they couldn't lock me up for 15 days for 23 hours without adding me to the New York State count. So therefore, there has to be a record of the original police report. And it states that I threw drugs away, that he chased me down, that he could observe that I see me, that none of this happened. These officers weren't there. They showed up at the bar later. I have proof because, oh, I'd just like to say that Verizon has guaranteed me that my phone call records will be available upon the court's request. The minute I left the bar, someone from the bar called me and told me that, be careful, every cop in this parking lot are coming after you, and the whole time I'm on the phone. So I'm on the phone the whole time, and I'm like, you mean the cop in the parking lot? I don't see any cop behind me. I drive off. They pull me three blocks away from my home. This whole stop took nine minutes. I was able to travel 13 blocks away and almost get home before they surrounded me and forced me to the curb. These officers showed up on bikes later on after I stopped, and they gave a statement saying that they were the reason why the original officer came after me. All of it was made up. I never broke the law. I wasn't even at the bar for longer than 20 minutes, and by my own phone calls, I can prove that Charles Kanga was the one who called me to the bar. The minute I pulled up, the cop was in the parking lot already. She followed me, but she didn't follow me. So I went up straight 6th Street and took a right on Utica. She went in a covert direction and came up another street. And I'm on the phone the whole time saying, oh my God, she's doing 80 miles an hour running me down. Let me call somebody else. I just have proof. I understand. We have your argument and we have all of your materials. We appreciate you being here with us today. Thank you so much. That matter will be taken under advisement as well. So thank you all. We're all set with you. Thank you, Mr. McCullough. Thank you so much. I did the best I could. Thank you.